THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES H. MULLENS and WILLIAM SOLOMON, Appellants.

Argued January 18, 1944; decided April 20, 1944.

*Harold H. Corbin, Herman Hoffman, Edward J. Bennett* and *Abraham J. Gellinoff* for William Solomon, appellant. I. Corroboration was lacking as to both the 1935 and 1937 transactions. (Code Crim. Pro. § 399; *People* v. *Goldstein,* 285 N. Y. 376; *People* v. *Reddy,* 261 N. Y. 479; *People* v. *Munroe,* 190 N. Y. 435.) II. Evidence implying the commission by this defendant of another unrelated crime was improperly admitted. (*People* v. *Molineux,* 168 N. Y. 264; *People* v. *Zucker,* 20 App. Div. 363, 154 N. Y. 770; *People* v. *Montana,* 252 App. Div. 109.) III. The trial court also erred in admitting evidence of two other alleged crimes. (*People* v. *Molineux,* 168 N. Y. 264; *People* v. *Montana,* 252 App. Div. 109.)

*Henry Epstein, James B. Gitlitz* and *Victor S. Axelroad* for Charles H. Mullens, appellant. I. It was reversible error to admit in evidence a chain of acts and transactions of criminal or tainted character, not charged in the indictment, unconnected and unrelated to the transactions constituting the alleged crimes therein charged. (*People* v. *Harvey,* 235 N. Y. 282; *People* v. *Sharp,* 107 N. Y. 427; *People* v. *Molineux,* 168 N. Y. 264; *People* v. *Romano,* 84 App. Div. 318; *People* v. *Zucker,* 20 App. Div. 363, 154 N. Y. 770.) II. The corroborative evidence was insufficient as a matter of law. There was no direct proof of the receipt by Mullens from Burland of any moneys. (*People* v. *Kress,* 284 N. Y. 452; *The People* v. *Kennedy,* 32 N. Y. 141; *Lamb* v. *Union Ry Co.,* 195 N. Y. 260; Richardson on the Law of Evidence, 3rd ed. § 111; *People* v. *Buchalter,* 289 N. Y. 181; *People* v. *Razezicz,* 206 N. Y. 249.)

*Frank S. Hogan, District Attorney* (*Stanley H. Fuld* and *Richard G. Denzer* of counsel), for respondent. I. The guilt of the defendants was proved beyond a reasonable doubt. (*People* v. *Peller,* 291 N. Y. 438; *People* v. *Pesky,* 254 N. Y. 373; Penal Law, § 2; *People* v. *McKane,* 143 N. Y. 455; *People* v. *Jackson,* 182 N. Y. 66; *People* v. *Birnbaum* 208 App. Div. 476; *Wilson* v. *United States,* 162 U. S. 613.) The whole case need not be proved outside of the testimony of the accomplice. (*People* v. *Buchalter,* 289 N. Y. 181; *People* v. *Nitzberg,* 287 N. Y. 183; *People* v. *Goldstein,* 285 N. Y. 376; *People* v. *Kress,* 284 N. Y. 452; *People* v. *Cohen,* 223 N. Y. 406; *The People* v. *Hooghkerk,* 96 N. Y. 149.) II. The corroborative evidence is sufficient if it

tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth about his participation therein. (*People* v. *Reddy*, 261 N. Y. 479; *People* v. *Dixon*, 231 N. Y. 111.) III. There was ample corroborative evidence. (*People* v. *O'Neil*, 48 Hun 36, 109 N. Y. 251; *People* v. *Furlong*, 140 App. Div. 179, 201 N. Y. 511; *People* v. *Hines*, 284 N. Y. 93; *People* v. *Connolly* 253 N. Y. 330; *People* v. *Jackerson*, 247 N. Y. 36; *People* v. *Elliott*, 106 N. Y. 288; *People* v. *Elbroch*, 250 App. Div. 583.) IV. The defendants' guilt under counts 3 and 6, covering the 1937 transaction was established. (*Kerr* v. *Kerr*, 134 App. Div. 141; *People* v. *Becker*, 215 N. Y. 126; *People* v. *O'Neil*, 48 Hun 36, 109 N. Y. 251; *People* v. *Gaffey*, 182 N. Y. 257; *Campanelli* v. *United States*, 13 F. 2d 750; *People* v. *Sweeney*, 161 App. Div. 221, 213 N. Y. 37.) V. Evidence of other transactions involving Charles Walsey and the defendants, bearing upon various phases of the case, was properly received. (*People* v. *Johnston*, 228 N. Y. 332; *Lindsay* v. *People of the State of N. Y.*, 63 N. Y. 143; *People* v. *Duffy*, 160 App. Div. 385, 212 N. Y. 57; *Terry* v. *United States*, 51 F. 2d 49; *Clune* v. *United States*, 159 U. S. 590; *People* v. *Peckens*, 153 N. Y. 576; *People* v. *Thau*, 219 N. Y. 39; *People* v. *Grutz*, 212 N. Y. 72; *Johnston* v. *United States*, 22 F. 2d 1; *People* v. *Pindar*, 210 N. Y. 191; *People* v. *Sherlock*, 166 N. Y. 180; *People* v. *Cahill*, 62 App. Div. 612; *People* v. *Seidenshner*, 210 N. Y. 341; *People* v. *Molineux*, 168 N. Y. 264.)

LOUGHRAN, J. In outlining this bulky criminal case, it will be convenient to abridge two corporate names appearing in the record. Burland Printing Co., Inc., will be called the Burland Company. Temporary Emergency Relief Administration of the State of New York will be called the Relief Administration.

In 1935, the Burland Company was awarded a contract to supply the Relief Administration with its requirements of printed material for the ensuing fiscal year. In 1936, these parties entered into a like contract for the next fiscal year. Again in 1937, a further like contract for the following fiscal year was made by the Burland Company with the State Department of Social Welfare — the successor of the Relief Administration.

The People claimed that the defendant Mullens through his official position as a Deputy Comptroller of the State of New York had procured the execution of all three of these agreements in return for money that came to him from two officers of the Burland Company — Charles Walsey and Ira Walsey. The People also claimed that the defendant Solomon — who was not a public officer — had aided and abetted Mullens in each of these three transactions by receiving the unclean money from the Walseys and dividing it between Mullens and himself.

On that basis, both defendants were principals (Penal Law, § 2) and they were so indicted on six charges. Each of the aforesaid three transactions was made the subject of two counts. The 1935 transaction was presented in counts 1 and 4; the 1936 transaction in counts 2 and 5; the 1937 transaction in counts 3 and 6. The first of each of these sets of counts was drawn with reference to section 1826 of the Penal Law which says that a public officer who receives or agrees to receive any unlawful fee for doing or omitting any official act shall be guilty of a felony. Each of the other three counts looked to section 1823 which says that an executive officer who asks or receives any bribe upon an understanding that his official conduct shall be influenced thereby is guilty of a felony.

By separate findings as to each defendant and in respect of each of the six charges, the jury convicted both defendants on all six counts. Upon appeal to the Appellate Division, counts 2 and 5 — the charges relating to the 1936 transaction — were dismissed for failure of proof and the judgments of conviction as so modified were affirmed. By leave of a judge of this court, the defendants have now brought here for review their convictions upon counts 1 and 4 (the charges relating to the 1935 transaction) and counts 3 and 6 (the charges relating to the 1937 transaction).

The 1935 transaction is dealt with by the People as an affair altogether distinct from the transaction of 1937, and rightly so, as we believe. On the 1935 transaction, the main witness against the defendants was Charles Walsey, who at the times in issue was president of Burland Company. Put into direct discourse his recital of that transaction was as follows: For a long period beginning in 1931, Mr. Solomon helped the Burland Company in its quest for contracts and his nominees regu-

larly received payment for his services. The State printing contract for the fiscal year 1935–1936 was let by items designated as Groups A, B, C and so on. At that time, a local relief agency in the city of New York — the Emergency Relief Bureau — had been authorized by the Relief Administration to order printing under the State contracts. The 1935–1936 State contract was awarded to the Burland Company upon numerous items — but not upon Group B, which included many printing requirements of the Emergency Relief Bureau. In that state of affairs, I told Mr. Mullens at Albany that there was $8,000 or $10,000 in it if Burland could get from the Relief Administration some kind of contract that would include Group B business. Mr. Mullens told me to see Mr. Solomon about the financial part. I saw Mr. Solomon and a few days later he told me everything would be all right. Mr. Mullens then suggested to me that I have my son, Ira Walsey, as vice-president of the Burland Company, write to the purchasing agent of the Relief Administration offering on Group B a price 2% lower than the existing bid. Such a letter was sent by my son at my direction. About ten days later, my son, at the request of Mr. Mullens, went to Albany and there the promised contract was then signed and approved by the office of the State Comptroller. The same day — July 23, 1935, Mr. Solomon summoned me to his office in the city of New York to discuss the business of payment. We agreed on $8,000. From his office, I called up the office of the Burland Company downtown and told the bookkeeper to send up two checks for $4,000 apiece without putting in the name of any payee. On the arrival of these checks, I asked Mr. Solomon who it was I should make them out to and he gave me the name of H. Bitterman. I made out the checks to H. Bitterman, gave them to Mr. Solomon and went down to my office. Just after I got back there, a telephone call came in from Mr. Solomon that there was trouble about cashing the checks. He asked me to meet him at the Sterling National Bank on 39th Street and put my indorsement on the checks in order to get the cash for him. I went up to the bank. There I saw Mr. Mullens and Mr. Solomon waiting outside. This was around noontime. I went upstairs in the bank, cashed the checks, brought down $8,000 and handed it to Mr. Solomon in the presence of Mr. Mullens; then I left and that was the end of that matter.

A corresponding report of Ira Walsey's part in the 1935 transaction was made by his testimony.

The Walseys were accomplices as a matter of law. Section 399 of the Code of Criminal Procedure provides: "A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime." The corroborative evidence so required must be evidence from an independent source of some material fact tending to show not only that the crime has been committed but that the defendant was implicated in its commission. (*The People* v. *Hooghkerk,* 96 N. Y. 149.) The commission of the crime and the defendant's connection therewith are, however, the same thing when, as in the present case, acts of bribery are alleged. (*People* v. *O'Neil,* 109 N. Y. 251, 267.) The corroboration must always be by some witness other than another accomplice. (*People* v. *O'Farrell,* 175 N. Y. 323.) Where, as in this instance, several defendants are on trial, there must be corroboration as to each one. (*People* v. *Feolo,* 284 N. Y. 381.)

Two items of nonaccomplice testimony were offered to confirm Charles Walsey's account of Solomon's connection with the 1935 transaction, namely: 1. H. Bitterman — the payee of the two $4,000 checks that were cashed at that time — was Solomon's friend and Solomon theretofore had made it a practice to have funds paid to himself by way of checks drawn to the order of this same Bitterman. 2. At the request of Charles Walsey, the two $4,000 checks were drawn (the name of the payee being left out) by the bookkeeper of the Burland Company at its office and were then dispatched therefrom by the bookkeeper to Charles Walsey at the office of Solomon which was farther uptown in Manhattan. These two independent facts, we believe, could have been sensibly taken to be sufficient other evidence tending to connect Solomon with the 1935 transaction.

In their argument for Solomon on this branch of the case, his counsel say: " Charles Walsey's signature is on those two checks below Bitterman's signature, indicating that not Solomon, nor Bitterman, but Charles Walsey himself, cashed the checks and received the money. There is only Walsey's word that he thereafter gave that money to Solomon in front of the

bank." But this way of reasoning would be equally appropriate if the two checks had been drawn to the order of Solomon himself and had first been indorsed by him and then by Charles Walsey. So regarded, the argument virtually means that the testimony of an accomplice in respect of the fact of a criminal bribery must in all cases be supported by direct evidence — a proposition that must be rejected. (See 2 Bishop's New Criminal Procedure, 2d ed. pp. 911, 912. Cf. Penal Law, § 1041.)

For independent evidence tending to connect Mullens with the 1935 transaction as described by the Walseys, the People introduced these circumstances: 1. Just before the 1935–1936 State contract was let to the Burland Company, Mullens went to the office of the Relief Administration without any scheduled appointment and urged the executive director to accept the Burland Company's bid. 2. At 3:44 P. M. on July 23, 1935, Mullens entered a vault at Albany where he had a private deposit box. (This circumstance was held to be relevant to Charles Walsey's testimony narrating his passing of $8,000 to Solomon in the presence of Mullens in the city of New York at noon on the same date.) 3. Several months later, Mullens withdrew $3,880.17 from cash he kept at Albany. This three-fold corroborative evidence was, we think, adequate on its face to satisfy the statute for the purpose of the case against Mullens on the 1935 transaction.

As we pass now to a consideration of the jury's finding on the 1937 transaction, we keep in mind that — as each of the several acts charged against the defendants should be regarded as distinct from the others — the evidence with reference to the 1937 transaction is to be dealt with separately and without bringing into the scale the evidence given upon the 1935 transaction.

On June 24, 1937 — as Mullens conceded — Ira Walsey met Solomon, Mullens and a Mr. Dougherty of the State Comptroller's staff in rooms occupied by Solomon at a prominent hotel in the city of New York. In respect of this meeting, Ira Walsey said: "Mr. Mullens had the contract with him there. I signed the contract. And after I signed the contract I went into the other room with Mr. Solomon. I gave him $10,000. As I left the room Mr. Mullens went into the room that I had just left." All this (according to the Walseys) was in performance of a

corrupt bargain with Mullens for an award to the Burland Company of the State contract for the fiscal year 1937–1938.

There was independent evidence of the following facts: 1. Ira Walsey had more than $10,000 in currency in his possession on June 24, 1937. 2. Mullens and Dougherty together came to Solomon's hotel suite on that day, after the 1937–1938 State contract with the Burland Company had been brought by Dougherty to the city of New York from Albany at the behest of Mullens and at another hotel had earlier been approved by Mullens as Deputy State Comptroller. 3. Ira Walsey and Solomon withdrew from the outer room of Solomon's hotel suite to a separate room there. 4. Mullens entered that separate room upon the departure of Ira Walsey therefrom.

As to these fractions of the proof, the District Attorney in his brief says: " Not only did Dougherty, who accompanied Mullens there, testify that Ira Walsey had been in Solomon's room with Solomon and Mullens at the time in question, but Mullens himself acknowledged that such was the fact. The circumstance that Dougherty did not know what transpired at the meeting is immaterial; *evidence of the defendant's presence at a conference which, according to the accomplice, concerned the crime charged, constitutes the corroboration.*" (The emphasis is ours.)

We cannot adopt that proposition. It is true there have been cases in which independent proof of the presence of an accomplice in the company of an accused near the locality of a crime at about the time of its commission was deemed to connect the accused with the offense. (See *Commonwealth* v. *Holmes,* 127 Mass. 424, 442, 443; cf. *People* v. *Becker,* 215 N. Y. 126, 141.) In those cases, however, the body of the crime could have existed without the defendant's being connected with it and was shown by evidence wholly outside the accomplice's testimony. In the present case, as we have already observed, the contrary is true; proof of the body of the crime was here the same thing as proof of guilty connection with it. (*People* v. *O'Neil,* 109 N. Y. 251, 267.) The bare fact of the presence of Solomon and Mullens with Ira Walsey near the spot where on June 24, 1937, Ira Walsey in private (as he said) handed $10,000 in cash to Solomon was not without more sufficient corroboration of Ira Walsey's short declaration of the fact of such a transfer. (See

*People* v. *O'Farrell,* 175 N. Y. 324, 325; *People* v. *Kress,* 284 N. Y. 452; *People* v. *Courtney,* 28 Hun 589; *People* v. *Willard,* 159 App. Div. 19; *People* v. *Goodman,* 170 App. Div. 30.)

Upon the foregoing examination, we do not find the case for the People to be necessarily conclusive. From that viewpoint, we now take up exceptions that were registered by the defendants against several matters of evidence.

Solomon was shown to be a political leader. The two $4,000 checks that were used at the time of the 1935 transaction were drawn as we have noticed to the order of H. Bitterman. As corroboration for Charles Walsey's story of that transaction, the People were allowed to introduce against Solomon evidence that in 1933 two $1,000 checks which were then drawn to the order of Bitterman by the owner of a restaurant property in the city of New York were paid to Solomon as a reward for the removal of a subway entrance structure that had stood in front of that property. Though in his instructions to the jury the Trial Judge took pains to stress the apparent absence of impropriety in that occurrence, the contrary implication was we think, too obvious to have been ignored. There was no cogent reason for dragging out that 1933 episode, for Solomon's habit so to make use of Bitterman's name had already been demonstrated and was undisputed. The manifestly prejudicial quality of this remote and merely cumulative fact seems to have been its whole worth to the People.

Charles Walsey was permitted to testify respecting a collusive arrangement between the Burland Company and a competing concern pursuant to which the Burland Company — in the interest of and for a price received from its competitor — had submitted a series of bids on State printing contracts at prices that were grossly excessive  There was, however, no showing of any participation by either Solomon or Mullens at any stage of that fraudulent "rigging of bids." Conceding this gap, the People now say no harm could have come to either defendant in consequence of such proof of trickery practiced by others. But that proof — which touched every State printing contract from 1932 to 1939 — was offered by the People (so they said) " as part of a common scheme and plan involved in these bribery situations," — and doubtless was so weighed by the jury.

None of these collateral transactions had any probative force save as thereby it was implied that the defendants were men whose experience had predisposed them to the commission of offenses of the sort for which they were on trial. Since these numerous extraneous crimes were allowed to be taken into account, we must conclude that the jury were influenced thereby (see *People* v. *Robinson*, 273 N. Y. 438, 445). All this cannot be overlooked consistently with the hitherto fundamental rule that character is never an issue in a criminal prosecution unless the accused choose to make it one (see *People* v. *Zackowitz*, 254 N. Y. 192).

When, as in this instance, men are put on trial on several distinct charges, evidence which has relation solely to one of the accusations may seem to be heightened by the evidence given upon the others and in that way a mass of evidentiary details may unfairly appear to include something which is actually wanting. That fallacy is hard to avoid, as everybody knows who has had occasion to canvass a record like the one in hand. Quite probably the jury here so judged the part from the whole in reaching their conclusion that even the charges relating to the 1936 transaction had been established. From any standpoint, then, the present case was a controversy from which foreign things of such a nature as to invite reprobation should have been rigidly excluded. We cannot assume that the different course of the trial did not unduly contribute to a verdict of guilty which (as the Appellate Division has found) was without warrant in one considerable part.

The judgments should be reversed and a new trial ordered.

LEHMAN, Ch. J., RIPPEY and LEWIS, JJ., concur; CONWAY, DESMOND and THACHER, JJ., dissent.

Judgments reversed, etc.