Con G. Cholakis, J.
By indictment No. 39730 the defendant stands accused of grand larceny in the third degree by extortion (Penal Law, § 155.30 and of two counts of bribe receiving (Penal Law, § 200.10). By indictment No. 39732 he stands accused of two counts of perjury in the first degree (Penal Law, § 210.15). Upon the People’s motion and with the defendant’s consent the two indictments were consolidated for the purpose of trial. (CPL 200.20, subd. 4.) The trial has commenced and the People’s case is complete. The defendant now moves for a trial order of dismissal on the grounds that the evidence is not legally sufficient (CPL 200.10, 70.10, subd. 1) and for an acquittal on the grounds that the evidence is insufficient as a matter of law to prove the defendant’s guilt beyond a reasonable doubt.
To establish a context and putting aside for the moment the question of credibility, the evidence adduced by the People to this point may be summarized briefly. In the latter part of 1970 Romeo De Marco went to the defendant, who was then a New York State Assemblyman, for assistance in recovering the designation as a Nassau County Towing Garage which he had previously enjoyed. In response to this entreaty the defendant made a telephone call to Angelo Roncallo, then Nassau County Comptroller, and requested Mr. Roncallo’s help in securing for Mr. De Marco the sought after designation. In return, the defendant allegedly demanded and received remuneration. Mr. De Marco also introduced to the defendant Louis Caiazzo who was interested in obtaining contracts for cement work from the Town of Oyster Bay. Again a telephone call was made and again remuneration was allegedly sought and received. Eventually these events came under the scrutiny of a Nassau County Grand Jury. In testifying before that body the defendant, inter alia, denied receiving money from either Mr. De Marco or Mr. Caiazzo.
Each of the five counts in the two indictments is the object of a dual attack. First, the defendant contends that the evidence is not legally sufficient to establish the crime charged or any lesser included offense (CPL 200.10, 70.10, subd. 1) and second, he argues that even if the evidence is "legally sufficient”, there exists a reasonable doubt as a matter of law *923 requiring dismissal. (See People v Ledwon, 153 NY 10, 18 ["a mere scintilla or even some proof is not sufficient to warrant the submission of a case to the jury.”]; CCP 410; Denzer, Practice Commentary, McKinney’s Cons. Laws of N.Y., Book 11 A, CPL 290.10, p. 526 ["The Code term 'insufficient’, it is important to bear in mind, is equivalent to the CPL section’s 'not legally sufficient,’ and any such determination is purely one of law (People v Ledwon)”].)
The People have adduced some evidence to establish each and every element of grand larceny by extortion including a threat to: "Perform any other act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.” (Penal Law, § 155.05, subd. 2, par. [e], cl. [ix].)
The evidence is, therefore, legally sufficient under subdivision 1 of CPL 70.10. However, the only testimony as to the elements of a threat and the instilling of fear is an isolated statement by Mr. De Marco. The manner in which this testimony was given, taken in context, renders it implausible that there was a threat made by the defendant to Mr. De Marco which instilled in the latter a fear that the defendant would harm him materially with respect to his business or financial condition. This implausibility is so manifest that there exists a reasonable doubt as a matter of law as to the defendant’s guilt of larceny by extortion.
Therefore, the first count of indictment No. 39730 should be and the same is hereby dismissed.
The remaining counts of indictment No. 39730 both accuse the defendant of bribe receiving. Since the arguments addressed to these two counts are the same, they will be jointly discussed. The defendant contends that the evidence adduced by the People with respect to these counts is legally insufficient, first, because corroboration is wanting and second, because the conduct alleged bears no relation to the official duties of a New York State Assemblyman.
In People v Mullens (292 NY 408, 414) the Court of Appeals said: "The corroborative evidence so required [under Code Crim. Pro., § 399] must be evidence from an independent source of some material fact tending to show not only that the crime has been committed but that the defendant was implicated in its commission.”
*924 The defendant seizes upon this statement to support his contention that corroboration is required not only to connect the defendant with the crime, but also to establish the commission of the crime itself. Even a literal reading of the Mullens statement does not fully support this assertion and an examination of the statement’s roots reveals that the intended meaning differs from the interpretation argued for by the defendant.
In the normal case a corpse or a forced lock is at hand to corroborate the occurrence of a crime. Identity is the question. Thus, prosecutors early sought to satisfy corroboration requirements by offering independent evidence of the crime rather than of the defendant’s connection with it. In response the courts held that: "’the corroboration is not sufficient if it merely show the commission of the offense, or the circumstances thereof.’” (State v Thorton, 26 Iowa 79, 81). So expressed, the idea is clear: corroboration is required not to establish the commission of the crime, but the defendant’s connection with it. In the two rephrasings which mark the path from Thorton to Mullens, however, the original meaning became muddied. (See People v Courtney, 28 Hun 589, 592; People v Hooghkerk, 96 NY 149, 154 [argument of counsel].)
Where crimes other than bribery have been involved, the Court of Appeals has held: "The corroborative evidence need not show the commission of the crime; it need not show that defendant was connected with the commission of the crime. (People v Mayhew, 150 NY 346, 353; People v Cohen, 233 NY 406, 426.) It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth. The corroboration is not restricted to any particular point. Its connection with defendant’s own statements and denials should be considered. (People v Becker, 215 NY 126, 140.) It may vary in its nature according to the circumstances of the particular case. Matters in themselves of seeming indifference or light trifles of the time and place of persons meeting may so harmonize with the accomplice’s narrative as to have a tendency to furnish the necessary connection between defendant and the crime.” (People v Dixon, 231 NY 111, 116-117.)
The defendant contends that a special rule announced in Mullens, and not the normal accomplice-corroboration standard, prevails in bribery cases. The background of the Mullens *925 statement argues against this position and no other case reveals an intent to alter the accomplice-corroboration requirement by adopting a special rule for bribery prosecutions. Indeed two cases, People v Wheatman (31 NY2d 12, 20) and People v Fiore (12 NY2d 188, 201-202) indicate that the corroboration requirement as stated in Dixon applies in bribery, as in other prosecutions.
Therefore, we hold that the corroborative evidence offered in the instant case is sufficient for the purposes of the present motion.
According to section 200.10 of the Penal Law, the crime of bribe receiving in the second degree is committed when, "A public servant * * * solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that his vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.” Both the second and third counts of indictment No. 39730 accuse the defendant of bribe receiving in the second degree committed while he was a New York State Assemblyman. The defendant contends that the People have failed to establish that his conduct as a public servant was or could have been influenced with respect to the designation of Nassau County garages or the awarding of public works contracts in the Town of Oyster Bay and that the evidence is therefore not legally sufficient.
At common law both the giver of a bribe and its recipient committed the crime of bribery. It originated as an offense against public justice which occurred when a Judge or other individual concerned with the administration of justice took any undue reward to influence his behavior in office. (4 Blackstone’s Comm., p 139; see also, Bishop, New Criminal Law 468, subd. 3, Perkins, Criminal Law [2d ed.], p 469.) The former Penal Law also merged the giving and receiving into a single offense which was defined in terms of a public officer and influence upon the exercise of the powers or functions of office. (Penal Law of 1901, § 378.) Thus, a traditional element of the crime of bribery is a promised or actual influence upon official powers or duties. "The gist of the crime of bribery is the wrong done to the people by corruption in the public service.” (People v Chapman, 13 NY2d 97, 101; emphasis supplied.)
The People contest the basic premise that a bribe must relate to the exercise of official powers or functions. From the *926 use in the present Penal Law of the terms "public servant” and action "as a public servant” in place of the terms "public officer” and "official duty” used in the former Penal Law, they argue that the requirement of a relationship between the bribe and official conduct has been removed. However, Denzer and McQuillan, in their Practice Commentary to subdivision 15 of section 10.00 of the Penal Law (McKinney’s Cons. Laws of N.Y., Book 39, p 17), write: "It was not clear from most of these provisions [of the former Penal Law] whether they covered only 'officers’ — whatever the precise meaning of that term may be — or whether they also embraced employees or other persons hired by officers (see People v Salomon, 1914, 212 NY 446, 106 NE 111). In the absence of express statutory language to the contrary, these sections did not apply to persons elected or appointed to public office who had not yet officially assumed their duties [citations omitted].
"The revision resolves all these problems by use of the comprehensive term, 'public servant’.” The defendant in the Salomon case referred to in the above quotation was a process server attached to the District Attorney’s office who accepted a bribe in return for his delaying the service of a summons. At his trial for bribery the defendant contended that he was not a public officer and that his duties could not therefore be official. While the argument failed to persuade, it highlighted the ambiguities in the former Penal Law. Avoidance of these ambiguities amply explains the rewording of the bribery statute and the court rejects the contention that the drafters, quietly and without discussion, abolished one of the traditional elements of the crime of bribery.
The People, relying on four cases, assert that legally sufficient evidence of bribe receiving would exist if it be shown that the defendant, though lacking the actual power to do that which he promised, held himself out as possessing such power. In three of these cases, People v Chapman (supra), People v Lafaro (250 NY 336), and People v Jackson (191 NY 293), the bribe recipient was a public servant, approached as a public servant to act as a public servant in exercising a power of a type normally exercised by one in his position though perhaps not exercisable by him. The fourth case, People v Clougher (246 NY 106), differs in that the bribe recipient’s power did not derive directly from the powers of his office but from his actual relationship to the matter, a relationship *927 which was entirely owing to his employment as a public servant. In contrast, this defendant, at the time in question, wore three hats. He was an Assemblyman, a political figure and a lawyer. The evidence adduced by the People establishes neither the capacity in which he was approached nor in which he acted.
Even assuming that the defendant was approached as a New York State Assemblyman, there is no evidence that he possessed official power with respect to county towing garage designations or town public works contracts. It is no easy task to identify the official powers and duties of an Assemblyman. Beyond section 1 of article III of the New York State Constitution which vests the legislative power in the Senate and Assembly, there is no specification of powers. Of course, under the American system of government all powers are divided up and distributed among the executive, legislative and judicial branches. (The Federalist Papers [Fairfield 2d ed.], Nos. 47, 48, 49 and 50.) In that scheme the legislative power in its purest form is the power to enact or not enact laws. In the narrowest of senses then, the official action of a legislator consists of his voting upon legislation.
From the power to vote, however, a legislator derives other powers and duties. Drawing upon two provisions of the Public Officers Law and an ALR annotation (Public Officers Law, § 76 [Receiving Bribes by members of legislature] and 77 (Unlawful fees and payments); "Bribery as affected by nonexistence of duty, etc.”, 158 ALR 323, 348-352), the derivative powers and duties of a legislator may be categorized as follows:
(1) A vote upon a legislative measure;
(2) A vote to confirm an appointee;
(3) The conduct of or participation in a legislative investigation;
(4) Discussion, persuasion and influence upon other legislators;
(5) The exercise of a power or the performance of a duty expressly conferred by law upon the legislator as a legislator; and
(6) The exercise of a power or authority derived from an actual relationship between a legislator, as a legislator, and a particular matter.
The evidence adduced by the People not only fails to establish any actual power possessed by the defendant as an *928 Assemblyman with respect to county towing garage designations and town public works contracts, it also fails to establish any derivative power. Absent a relationship between his public office and the allegedly purchased conduct, the evidence is not legally sufficient. As the Appellate Division, Second Department, said in discussing the jurisdiction of a special prosecutor: "Clearly, the Special Prosecutor would not be authorized under his grant of power to prosecute the defendant for any acts committed by him in violation of law just because he happened to be a Judge. For instance, such violations of law as speeding or reckless driving or driving while intoxicated or numerous other criminal violations of law which could readily be cited would not come within the purview of the Special Prosecutor’s jurisdiction because they were acts performed by a Judge in his individual capacity and not as a Judge. ” (Moritt v Nadjari, 46 AD2d 784, 785; emphasis supplied.)
Here actions which would not be criminal if performed by either a political figure or a lawyer do not become criminal when performed by a political figure and lawyer who happens also to be a State legislator, if the actions are not within the scope of his official duties.
State v Bowling (5 Ariz App 436) is an Arizona case with a fact pattern very similar to that before this court. There the proprietor of a tavern contacted a State legislator for assistance in obtaining a liquor license. Five thousand dollars were paid to the legislator and another in return for their services and a license was obtained. The legislator was indicted for bribe receiving under a statute not materially different from section 200.10 of the Penal Law. In reversing the conviction the appellate court wrote (p 444): "In attempting to show the inapplicability of the bribery statute to the subject conduct, the appellants ask in their brief: 'Would they violate the statute by accepting remuneration for a speaking engagement on behalf of a local candidate for office? How about a legislator-attorney who represents a property holder on a variance before a local zoning board? or a legislator-physician who accepted a free dinner to speak for or against medicare?’
"While we can see a distinction in degree of impropriety between these postulated activities of a legislator and that presented here, we are of the opinion that the subject statute draws no discernible line in separating this type of concededly noncriminal conduct from that sought to be punished as a *929 felony in this action. That the legislature has the power to delineate for punishment the type of conduct under consideration is not the question before us [footnote deleted], but rather whether it had done so at the time of the commission of these acts. We hold that it had not.”
This statement is as applicable to the instant case as it was to the case in which it appeared. Our system of government is premised upon a separation of powers. The Legislature enacts laws, the executive enforces them and the judiciary but applies them. If the Legislature has not condemned the conduct of its own members such as is here alleged, then this court cannot punish it.
Based on the foregoing, the motion for a trial order of dismissal is granted as to the two bribe receiving counts and the same are hereby dismissed on the grounds that the evidence is not legally sufficient.
The defendant applies for a trial order of dismissal as to the two perjury counts on the ground that there is insufficient corroboration. He contends that in addition to the sworn statements of Mr. De Marco and Mr. Caiazzo the People must adduce "some independent proof, be it direct or circumstantial, that leads to the reasonable inference that in fact [the defendant] received the money.” He argues that such proof must exclude every hypothesis consistent with innocence.
In support of each perjury count the People have offered the testimony of a witness, in the first instance Mr. De Marco and in the second Mr. Caiazzo, which contradicts the allegedly perjurious statement of the defendant. Section 210.50 of the Penal Law provides that, "In any prosecution for perjury * * * [the] falsity of a statement may not be established by the uncorroborated testimony of a single witness.” To satisfy this requirement the People have offered circumstantial evidence to corroborate the testimony of the single witnesses.
The defendant’s contention that the corroborative evidence is insufficient rests upon his assertion that it must be of such a nature as to exclude every hypothesis save the defendant’s guilt. This argument was specifically addressed and rejected by the Court of Appeals in People v Fellman, reported under the caption of People v Sabella (35 NY2d 158, 168-169). The court there held:
"[According to the weight of authority, where the circumstantial evidence serves only to corroborate the direct testimony of a single witness, it need not exclude to a moral *930 certainty every hypothesis but guilt (see Ann., Corroboration by circumstantial evidence of testimony of single witness in prosecution for perjury, 111 ALR 825). Since that standard only governs cases 'where the prosecution relies wholly upon circumstantial evidence to establish the guilt of the accused’, (Richardson, Evidence [10th ed], § 418, p 119) it has no bearing where the circumstantial evidence merely furnishes partial proof of a single element, i.e., falsity (see Denzer & McQuillan, Practice Commentary, McKinney’s Cons. Laws of N.Y., Book 39, Penal Law, § 210.50).
"Justice Hopkins in his dissenting memorandum in this case felt that the circumstantial evidence should be considered adequate if it would suffice to corroborate the testimony of an accomplice. This suggests a useful analogy (see, e.g., People v Woodcock, 52 Cal App 412) for both of these corroboration rules are founded on the common theory that an accused should not be convicted solely upon the testimony of a witness having a clear motive to fabricate. It has been our experience that this goal is adequately met when the independent evidence fairly 'tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the [witness] is telling the truth.’ (People v Dixon, 231 NY 111, 116; see, also, People v Morhouse, 21 NY2d 66; People v Wheatman, 31 NY2d 12.).” The evidence adduced by the People satisfies the criteria enunciated in the statute and by the Court of Appeals in Sabella (supra).
The defendant also raises issues concerning the manner in which the People sought to establish the legality of the Grand Jury’s questions propounded to the defendant and the scope of the Grand Jury’s investigation. Upon an examination of the testimony and exhibits presented, the court finds that both matters have been adequately established to survive this motion.
Therefore, the motion for a trial order of dismissal on the grounds that the evidence in support of the two perjury counts is not legally sufficient is denied.
Similarly, the motion to dismiss the two perjury counts on the grounds that the evidence is insufficient as a matter of law to prove the defendant’s guilt beyond a reasonable doubt is denied.