Richard C. Delin, J.
The defendant moves this court for certain omnibus relief. The motion is decided as follows:
The branch of defendant’s motion which seeks to inspect the Grand Jury minutes and to thereupon dismiss the indictment accusing him of the crime of bribery in the second degree for legal insufficiency is granted to the extent that the court has read the stenographic minutes of the Grand Jury proceeding which resulted in the indictment, and finds that the evidence contained therein is legally sufficient to support the indictment. (CPL 210.30.)
The defendant moves this court for an order dismissing the indictment, on the ground that the alleged complainant, a security officer of the State University of New York at Old Westbury, was not a person authorized by law to issue a summons and, consequently, could not thereby have his action, decision or judgment as a public servant, if in fact he was such, influenced by the conduct of the defendant who is alleged to have offered him a bribe to forego the issuance of such summons.
A review of the bribery statute reveals that the subject of the intended bribe must be one engaged in public service. "A person is guilty of bribery in the second degree when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant’s vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.” (Penal Law, § 200.00, emphasis added.)
The threshold question, therefore, is whether or not the *215 security officer is a public servant for the purposes of this section.
A "public servant”, as defined in subdivision 15 of section 10.00 of the Penal Law means "(a) any public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state, or (b) any person exercising the functions of any such public officer or employee. The term 'public servant’ includes a person who has been elected or designated to become a public servant.”
In determining the issue presented by the motion, the court takes cognizance of the fact that the Trustees of the State University of New York are charged with the responsibility of providing for the care, custody and management of the lands, grounds, structures, buildings, equipment and facilities of the State university. (Education Law, § 355, subd 2, par c.) In furtherance of that end, they are empowered to appoint security officers and peace officers for the State University (Education Law, § 355, subd 2, par m), whose duty it is to "preserve law and order in and about the buildings and grounds of the institution of the state university to which they are assigned.” (Education Law, § 355, subd 2, par m.)
Additionally, security officers acting in the performance of their official duties are invested specifically with the power to issue and serve simplified traffic informations and appearance tickets upon persons when these officers have reasonable cause to believe that such persons have committed traffic infractions in their presence on the sites owned, operated and maintained by the State university.
CPL 100.10 (subd 2, par [a]) defines a simplified traffic information as. a written accusation by a police officer "or other public servant authorized by law to issue same” and which is filed with a local criminal court accusing a person with the commission of one or more traffic infractions.
Accordingly, the conclusion is inescapable that the security officer involved is a public servant within the meaning of the statute defining the crime, and assuming, arguendo, that the allegations contained in the indictment are true, the court concludes that he was lawfully acting within the scope of his duties. Further, the bribe which is alleged to have been made related to his official function, as a public servant, and was intended to influence his action, decision and judgment. (People v Ginsberg, 80 Misc 2d 921.)
The court takes judicial notice of the specifications issued by *216 the New York State Department of Civil Service as well as other legislation which has been adopted relative to State University Campus Security Guards, in which the Campus Security Officer II is conferred the status of peace officer. (See People v Wesley, 80 Misc 2d 1002.)
The vexing problem that exists, however, is that CPL 1.20 (subd 33), which exhaustively recites all those persons who are designated as peace officers, omits as such any reference to campus security officers or special policemen at State institutions.
Historically, special policemen at State institutions were not listed as peace officers in section 154 of the Code of Criminal Procedure, the precursor of CPL 1.20 (subd 33), and therefore were peace officers only to a certain limited extent. The Attorney-General of the State of New York was confronted, as far back as 1930, with the issue of whether or not certain officers of a State hospital, whose positions were omitted from section 154 of the Code of Criminal Procedure, were peace officers authorized to act pursuant to certain provisions of the Vehicle and Traffic Law. The applicable provision of the Mental Hygiene Law then in existence, which was the enabling legislation for the creation of special policemen at the State institution, is remarkably similar to the section of the Education Law here under scrutiny. The Attorney-General concluded that the officers were peace officers within limited jurisdictional bounds, but their absence from the recital of peace officers set forth in section 154 of the Code of Criminal Procedure meant that they were peace officers "only to a certain extent.” (1930 Opns Atty Gen 467, 468.) Quite obviously, the omission of these security officers from the enumerated list of peace officers has persisted as a problem for many years.
Section 154 of the Code of Criminal Procedure enumerated dozens of agencies whose members or employees enjoyed the designation of "peace officers”, and the ensuing section 154-a of the Code of Criminal Procedure declared that certain "peace officers” were also denominated "police officers”. The Practice Commentary to CPL 1.20 (subd 33) written by the Honorable Richard G. Denzer properly attaches a two-fold significance to the designation of "peace officer”. (McKinney’s Cons Laws of NY, Book 11A, CPL 1.20, p 21.) Initially, such peace officer was empowered to make an arrest without a warrant upon "reasonable cause” to believe that the arrestee *217 had committed a felony (Code Crim Pro, § 177), whereas one without such status was authorized only when the accused had in fact committed a crime (Code Crim Pro, § 183). In addition, and perhaps far more advantageous to the designee, a peace officer was expressly exempted from Penal Law sanctions which attached to and which rendered criminal the possession of certain firearms (former Penal Law, § 1900, subd a, par 1).
Under the former statute, most law enforcement activity was delegated to peace officers (see, e.g., Code Crim Pro, §§ 151, 153, 177 et seq., § 797 et seq.), and there were few benefits enjoyed by a police officer that were not so enjoyed by a peace officer. However, Judge Denzer correctly observes that the current statutes dealing with law enforcement activity have shifted the emphasis from peace officers to police officers.
It would appear that the Legislature intended solely to limit the realm of the authority of campus security officers, who are peace officers, to the buildings and grounds of the institution of the State university to which they are assigned, while expanding the parameters of their authority to that possessed by police officers (Education Law, § 355, subd 2, par m).
Accordingly, that branch of the defendant’s motion is denied. [Additional matter omitted from publication.]