OMAR INTERNATIONAL, INC., Plaintiff,

v.

ALAF GENERAL ORGANIZATION FOR FODDER, The Commercial Bank of Syria, S.A., and UBAF Arab American Bank, Defendants.

No. 85 Civ. 8566(VLB).

United States District Court, S.D. New York.

March 31, 1993.

Samuel J. Abate, Jr., Beatie, King & Abate, New York City, for plaintiff.

Michael E. Norton, King and Spaulding, New York City, for defendant UBAF Arab American Bank.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case involves an allegedly wrongful seizure of funds put up by plaintiff to secure an irrevocable standby letter of credit posted in connection with an international commercial transaction.

In this memorandum order I address a claim by plaintiff Omar International, Inc., ("Omar") against defendant UBAF Arab American Bank ("UBAF"), a New York bank.

Omar had applied to UBAF for a standby letter of credit in connection with Omar's commercial transaction with ALAF General Organization for Fodder ("ALAF"), a Syrian corporation. In summary, Omar and ALAF had a commercial dispute in the matter to which the letter of credit pertained. After the letter of credit had expired UBAF, without Omar's permission, transferred to another account in UBAF the funds belonging to Omar and held by UBAF to secure the letter

1. I deem as moot my conditional order of dismissal issued on March 5, 1987 incorporating by reference a "settlement agreement" between Omar and the Syrian defendants having been entered into in 1987. No such agreement dated

of credit. The transferee account was that of the agent of ALAF, the intended beneficiary of the letter of credit. After Omar settled its commercial dispute with ALAF, UBAF returned to Omar the funds that UBAF had transferred.

UBAF appears itself to have retained the interest earned on the monies which it had transferred to the account of ALAF"s agent, contrary to a court order issued on March 27, 1991. UBAF claims it credited or paid that interest to the account of ALAF"s agent but that claim is unsupported. Moreover, this would have been both illegal and unauthorized.

Omar now moves to recover interest on the improperly transferred funds for the nearly five-year period during which the funds were held in the account of ALAF"s agent at UBAF, and additional relief including costs and attorneys' fees. I treat these requests as applications for enforcement of my prior orders issued December 25, 1985, March 27, 1991,[1] May 6, 1991, and June 3, 1991.

I grant Omar's motion to the extent set forth below, and also direct UBAF to show cause why it should not be held in contempt and assessed attorney's fees, as more fully explained in part VII below.

### II

Omar, a New York corporation engaged in the import-export business, initiated this action on October 30, 1985 seeking, *inter alia,* to prevent UBAF from transferring funds belonging to Omar posted to secure the standby letter of credit issued by UBAF. The letter of credit was procured pursuant to an agreement entered into between Omar and ALAF, an administrative unit within the Ministry of Agriculture of Syria, which agreement pertained to the sale of 40,000 metric tons of feed barley at a specified price ("the agreement").

Under the agreement, Omar, the seller, and ALAF, the buyer, were required to post

in 1987 has been presented to me nor have the conditions set forth in that order been fulfilled. The settlement agreement referred to in the present motion appears to have been completed in 1990.

matching performance bonds guaranteeing performance of their respective contractual obligations, with ALAF's posting of its bond a condition precedent to Omar's obligation to ship the barley. In April 1985, Omar posted with UBAF its performance bond (originally in the amount of $250,000, later increased to $295,800) in accordance with the agreement with ALAF: Omar already had a banking relationship with UBAF.

UBAF placed Omar's funds in an interest-bearing collateral account, and issued irrevocable standby letter of credit # 100547 (the "letter of credit") on behalf of Omar in favor of the Commercial Bank of Syria, S.A. ("the Syrian bank") with ALAF as the designated beneficiary.

The Syrian bank, a banking customer of UBAF which acted as ALAF's agent and banker throughout the transaction, is a major shareholder of UBAF. ALAF and the Syrian bank are sometimes referred to here as "the Syrian defendants." [2]

UBAF thus was both the issuing bank for Omar and the depository bank for the Syrian bank in the event the letter of credit were to be drawn down.

The amended expiration date of the letter of credit was October 4, 1985. On October 28, 1985 UBAF notified Omar that by telex dated October 27, 1985 the Syrian bank had instructed UBAF to make payment on the letter of credit because "your clients [Omar] did not fulfill their contractual obligations." [3] Omar attempted to prevent the Syrian bank from drawing upon the letter of credit by informing UBAF by telephone and telex that ALAF had not posted its required guarantees and by pointing out that the letter of credit had in any event expired. UBAF did, however, transfer the funds to the Syrian bank's account pursuant to the Syrian bank's telex instructions, which stated in relevant part, "kindly credit our head office account

with you for USDLRS.295.800/—under tested teleadvice to keep it as margin until settlement of the lawsuit [in Damascus]."

UBAF informed Omar that UBAF would not make payment with respect to the letter of credit until 5 PM on October 30, 1985. Omar commenced this action and sought a temporary restraining order, which I granted at 3:15 p.m. on October 30, 1985, to prevent payment with respect to the letter of credit, but the transfer of $295,800 to a Syrian bank account at UBAF had already been accomplished. Omar then amended its complaint, naming UBAF as an additional defendant and on December 23, 1985, I issued a preliminary injunction, ordering that "the funds in the amount of $295,800, plus any interest that may be accruing thereon, currently credited to the 'margin account' of [the Syrian bank] at defendant UBAF in New York continue to be held in the 'margin account' ... pending further order of this court" and enjoining the transfer, withdrawal, reduction or encumbrance of such funds without my prior approval. That injunction has never been modified, vacated, or appealed.

UBAF neither answered nor moved to dismiss the amended complaint in this action.

The funds remained frozen in an account at UBAF until June 1, 1990, when, subsequent to Omar's settlement with ALAF, UBAF credited Omar with $289,610.[4] Omar did not receive any interest or an accounting for interest that had or may have accrued from October 30, 1985 to June 1, 1990, and sought judicial relief shortly thereafter.

On March 27, 1991 I granted Omar's motion for an order requiring that UBAF provide an accounting of all funds including interest in the "margin account" at UBAF and found that Omar is entitled to the interest that had accrued in that account. On May 6, 1991, I ordered UBAF to pay attorney's fees

---

2. ALAF and the Syrian bank are named as defendants in this action and were served, but apparently have never answered or appeared.

3. The instructions to UBAF from the Syrian bank referred to a Syrian court decree. The underlying commercial dispute apparently was intended by the parties to be, and was in fact, resolved under Syrian law, as indicated below.

4. It is undisputed that the actual amount credited to Omar was $289,610, although the amount that had been transferred on October 30, 1985 was $295,800. The crediting of these funds by UBAF was not brought to my attention by UBAF prior to June 1, 1990, as required by my order of December 23, 1985.

and costs of two thousand seven hundred and fifty-six dollars ($2,756) associated with the making of that motion. UBAF filed no responsive affidavit in connection with that application.

UBAF failed to comply with my March 27, 1991 order. On June 3, 1991, I directed that should UBAF not comply by June 24, 1991, UBAF would be penalized for contempt of this court and from that day onward be required to pay two hundred and fifty dollars ($250.00) per day "until full compliance is achieved."

On September 3, 1991, UBAF's counsel orally represented, for the first time in this litigation, that the "margin account" was non-interest bearing. This led Omar to file the present motion to compel UBAF to pay Omar interest on the $295,800. UBAF's attorney responded by challenging Omar's right to any interest from the bank but offered no further accounting or information at that time relating to interest.

In early 1993, while this motion was pending, UBAF retained new counsel, following the death of its prior attorney. Decision on the motion was adjourned to permit UBAF's new counsel to submit supplemental papers, which were filed on February 24, 1993. These newly filed UBAF affidavits provided information about the "margin account" that was contrary to that previously given by UBAF's former counsel.

UBAF now has confirmed that UBAF did transfer Omar guarantee funds to a "non-interest bearing demand deposit account maintained by the Syrian bank at UBAF" on October 30, 1985, but later on that same day "$295,800, representing the payment to [the Syrian bank] under the Letter of Credit, was 'swept' from [the Syrian bank]'s non-interesting bearing account into [the Syrian bank]'s existing, interest-bearing 'call' account at UBAF ... pursuant to a pre-existing arrangement between UBAF and [the Syrian bank] concerning the maintenance of deposits by [the Syrian bank] at UBAF." Herman Aff. ¶¶ 9–10.

UBAF calculates the total amount of interest accruing from the time of deposit of the $295,800 on October 30, 1985 to its withdrawal on June 1, 1990 as $110,565.46, which the bank claims to have credited and paid to the Syrian bank's interest-bearing account.

The question of whether the interest exists having been resolved by UBAF's concession, I turn to the remaining issues in the present motion.

### III

■ As to any liability by it to Omar for interest, UBAF urges that its sole responsibility was to the Syrian bank and not to Omar regarding both transactions relating to the letter of credit, namely the October 30, 1985 payment to the Syrian bank account and the June 1, 1990 refund to Omar. UBAF focuses on a statement in the letter of credit that it "is payable against your [the Syrian bank's] first simple demand by tested telex." UBAF does not mention or contest the amended expiration date of the letter of credit, and asserts that all funds and amounts held in and credited to the Syrian bank's call account, including interest on the $295,800, constituted liabilities of UBAF to UBAF's customer, the Syrian bank.

In UBAF's view, any interest that accrued was a matter only as between Omar and the Syrian defendants under their agreement. Thus UBAF claims that since it followed the Syrian bank's instructions after the settlement that UBAF credit to Omar a net sum of $289,610, UBAF has discharged its obligations. UBAF cites no cases, statutes, or other authority for its position that its sole obligation was to the Syrian bank.

■ Omar, however, was also a UBAF depositor, having placed the funds securing the letter of credit at UBAF, with UBAF becoming the issuing bank on the letter of credit. An issuing bank can be expected to examine not only the draft presented by the beneficiary or its agent, in this case the tested telex of the Syrian bank dated October 27, 1985, but also any other relevant documents, particularly the letter of credit, before drawing down funds. "It is black letter law that the terms and conditions of a letter of credit must be strictly adhered to ..." *Corporacion De Mercadeo Agricola v. Mellon Bank,* 608 F.2d 43, 47 (2d Cir.1979),

quoted in *Mutual Export Corp. v. Westpac Banking Corp.*, 983 F.2d 420, 423 (2d Cir. 1993). Before accepting the instructions of a beneficiary pursuant to a letter of credit, a bank for its own protection and that of its customers should examine the documents, including the termination date of the letter of credit.[5]

UBAF does not deny that Omar notified the bank on October 28, 1985 that the letter of credit had expired on October 4, 1985.[6] Thus, at the time when the Syrian bank sought payment under the letter of credit the expiration of the letter of credit on its face barred UBAF from releasing Omar's collateral funds to the Syrian bank.

If UBAF considered itself obligated to take steps I now find it was not obligated or permitted to take, UBAF was not without recourse to judicial protection; it could have sought interim relief through an injunctive or declaratory action in a proper court against either or both parties.

UBAF never contested my original ruling barring transfer of Omar's assets. My order of December 23, 1985 was never appealed pursuant to 28 U.S.C. § 1292(a), nor has there been a motion to reconsider my order of March 27, 1991 finding Omar entitled to the interest on the "margin account"[7] or any of my subsequent orders in this case. In fact, so far as the record shows, the bank has never responded to the amended complaint in this action.

UBAF's liability for the interest on Omar's funds is a claim based on the relationship between Omar and UBAF, independent of the dispute between Omar and ALAF. Since funds of Omar were improperly transferred from an interest-bearing account, accrued interest remained attached to the principal during the entire period when Omar had no use of those funds and should have followed the principal when it was returned to Omar.

For the bank to retain interest as to which it has shown no business records indicative of payment to the Syrian bank or any party would constitute unjust enrichment.[8]

The Second Circuit has stated that "under New York law, a plaintiff seeking an equitable recovery based on unjust enrichment must first show that a benefit was conferred upon the defendant, and then show that as between the two parties enrichment of the defendant was unjust." *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 263 (2d Cir.1984); see *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 354 (2d Cir.1992). On the facts and circumstances of the present case, Omar has met this test.

### IV

The transfer of interest on the Omar funds involved here to the Syrian bank account would have directly violated my injunction of December 23, 1985 and my order dated March 27, 1991, and it was not authorized by

---

5. As pointed out in Kozolchyk, *The Immunization of Fraudulently Procured Letter of Credit Acceptances: All Services Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil, S.A. and First Commercial v. Gotham Originals*, 58 Brook.L.Rev. 369, 402 (Summer 1992), "It would be foolhardy to purchase or give value for documents that contain a discrepancy as serious as a presentation beyond the expiration of the credit; the documents for which value was given could, very possibly, be worthless." Under both the Uniform Customs and Practices for Documentary Credits and the U.C.C. § 5–112 comment 2, banks are permitted time before negotiating letters of credit, reflecting "a desire to give banks enough time to examine carefully the draft and documents." *Id.*, at 381.

6. UBAF informed the President of Omar on October 28, 1985 that the bank would not honor the letter of credit before 5:00 PM on October 30, 1985, but UBAF notified Omar at approximately

4:30 PM on October 30, 1985 that the letter of credit had already been honored.

7. My order of March 27, 1991 recites that Omar filed its motion on August 3, 1990, that UBAF apparently made some kind of response to Omar but not to the court in October, and that I had granted additional time to UBAF to file such papers. The bank did not file any papers and I ruled on the papers then before me.

8. UBAF has claimed that all interest has been paid by UBAF to the Syrian bank's interest-bearing account, and it has provided a schedule of interest with sum total which appears to have been created for this litigation: it does not offer any business records demonstrating that such interest was actually paid. In any event, the original transfer to the Syrian bank's margin account was improper, and UBAF must bear the burden of that impropriety.

any agreement or arrangement or instruction on the part of the original depositor of the funds (Omar).

All entities known to have actual or potential claims to the interest accruing on the $295,800 have been given an opportunity to assert a claim to it. Omar served its papers in this motion on the Syrian defendants, which have not responded or objected to Omar's application. Additionally, Omar and the Syrian defendants have reached a settlement which both sides agree did not require any further payment to or by the Syrian defendants. The Syrian defendants were served with Omar's motions papers accompanied by a letter from Omar's attorney dated November 9, 1992 notifying them of the opportunity to intervene and indicating that failure to do so would result in loss of any claim to sums sought in this case. See *SCAC Transport v. Steamship Danos*, 578 F.Supp. 327 (S.D.N.Y.1984); *judgment rev'd on other grounds*, 845 F.2d 1157 (2d Cir.1988); Note, 79 Colum.L.Rev. 1551 (1979); Note, 19 J. Maritime L. & Com. 605 (1988).

By receiving service as parties, or through a vouching-in procedure relevant to non-parties, the Syrian defendants were given actual notice of the present motion and appear to have waived any claim to the interest at issue here.

In opposing Omar's present application, UBAF has presented no new facts, and I adhere to my prior finding of March 27, 1991 that UBAF is liable to Omar for the interest accruing from October 30, 1985 to June 1, 1990 on the $295,800 posted to secure the letter of credit.

### V

█ UBAF has submitted a schedule of accrued interest on Omar's funds in the Syrian bank's call account which, although not persuasive as a business record under Fed. R.Evid. 802(6), can be used against the bank as an admission of a party under Fed.R.Evid. 801(d)(2). Omar also concedes that the accounting provided in this schedule is the amount that UBAF would have paid or that the bank treated as owed to the Syrian bank, even though erroneously, and that this is the amount of interest it is owed. Therefore, I

treat the interest applicable as being fixed by the parties at $110,565.46. See p. 397 *supra.*

### VI

█ Omar's application for interest on the withheld interest seeks an extraordinary remedy not ordinarily provided, unless a contract, statutory provision or special circumstances justify it. Thus, for example, 28 U.S.C. § 1961 provides for interest to be allowed on any money judgment in a civil case, but only provides for simple interest— even though the full equivalent of the use of money can only be provided by compound interest (which recognizes the ability to earn interest on funds paid as interest).

Interest on interest, i.e., compounding of interest, " 'as a general rule, is not allowed to be computed on a debt.' " *Devex Corp. v. General Motors Corp.*, 749 F.2d 1020, 1025 (3d Cir.1984), (quoting *Cherokee Nation v. United States*, 270 U.S. 476, 490, 46 S.Ct. 428, 433–34, 70 L.Ed. 694 (1926)), *cert. denied sub nom., Technograph, Inc. v. General Motors Corporation*, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985). Limited interest on interest which would not continue to compound, as sought here, might, of course, be awarded where a judgment granted interest on an amount resulting from an unsatisfied former judgment but this is not such a case.

No precedent for judicial imposition of extracontractual compound interest has been cited by Omar. I deny Omar's request for interest on the amount owed for the period October 30, 1985 through June 1, 1990.

### VII

By order dated March 27, 1991, I directed UBAF to provide Omar with an accounting by April 27, 1991 on the "margin account", which UBAF now concedes were "swept" into the Syrian bank's interest-bearing account on October 30, 1985. UBAF having failed to reply, in direct violation of my order, I nonetheless granted UBAF additional time to comply by June 24, 1991. UBAF continued to disregard my order until February 24, 1993.

In addition, UBAF has admitted that the oral accounting on September 3, 1991 by the attorney who was then counsel to UBAF "mistakenly asserted" that the account holding the funds was non-interest-bearing. I had no reason to believe prior to February 1993, nor is there any evidence that Omar had reason to believe, that the September 3, 1991 "accounting," based on knowledge solely within the control of defendant UBAF, was inaccurate or misleading. UBAF now comes forward with what it asserts is the accurate description, requests that I expunge this civil contempt fine, and seeks cancellation of my May 8, 1991 order requiring UBAF to pay two thousand seven hundred fifty-six dollars ($2,756) in attorney's fees and costs, on the grounds that its attorney was ill.

UBAF does not provide any indication that it was unaware of its attorney's problems. It did not then select substitute counsel nor has UBAF cited any authority for not treating UBAF's former counsel as its agent in failing to disclose the requested information or for making representations on behalf of UBAF.

UBAF shall show cause within thirty (30) days of the date of this order:

(1) why UBAF should not be fined for contempt for violating my order of June 3, 1991, and required to pay to Omar the amount set forth in that order of two hundred and fifty dollars ($250) per day for each day from June 24, 1991 until February 24, 1993 that UBAF failed to provide Omar with an accounting of the interest accruing on the $295,800 principal;

(2) why UBAF should not be assessed the sum I directed it to pay in my May 8, 1991 order for attorney's fees and costs; and

(3) why I should not assess UBAF for Omar's attorney's fees for any litigation necessitated by UBAF's failure to comply with my order of June 3, 1991 to make such disclosure.

## VIII

Omar's motion is granted to the extent that UBAF is ordered to pay to Omar one hundred and ten thousand five hundred sixty-five dollars and forty-six cents ($110,-565.46) within thirty (30) days of the date of this order.

UBAF also is ordered to show cause within thirty (30) days of the date of this order as to why I should not impose contempt fines and assess attorney's fees as set forth in part VII; and why it should not pay the attorney's fees previously assessed.

Applications for attorney's fees and costs, with the exceptions discussed above, will be deferred until my determination of the order to show cause with respect to UBAF. Omar may submit within thirty-five (35) days of the date of this order an application for any further attorney's fees to which it believes it may be entitled.

As required by my individual rules, originals of all papers shall be filed with the Clerk of the Court and courtesy copies delivered to my chambers at the time of filing.

**SO ORDERED.**