The CHASE MANHATTAN
BANK, N.A., Plaintiff,

v.

The CELOTEX CORPORATION, Dana
Corporation and United States Mineral
Products Company, Defendants.

No. 87 Civ. 4630 (VLB).

United States District Court,
S.D. New York.

Sept. 13, 1993.

Alani Golanski, Levy Phillips & Konigs-
berg, New York City, for plaintiff.

Malcolm I. Lewin, Morrison Cohen Singer
& Weinstein, New York City and John deQ.
Briggs III, Howrey & Simon, Washington
DC, for Dana Corp.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District
Judge.

### I

In 1987, the New York Plaza Building
Company (the "Building Company") and
plaintiff Chase Manhattan Bank (the "Bank")
brought separate suits based on asbestos ma-
terial affecting the value of One New York
Plaza (the "property"), in which Dana Corpo-
ration ("Dana") was a defendant. At the
time these suits were filed, the Building
Company owned the property and the Bank
held an option to buy it. In October 1989 the
Bank exercised its option and bought the
property; the Bank obtained no restriction
on the Building Company's rights with re-

spect to the Building Company's pending litigation against Dana.

On May 19, 1992 I dismissed on consent the Building Company's suit against Dana on the merits (87 Civ. 5513). The claims in that suit are based on the same events as those underlying the Bank's suit; the sole material difference is the status of the plaintiffs in the two actions. The Bank does not deny awareness of the Building Company's action in dismissing its case.

On March 19, 1993 Dana moved for summary judgment dismissing the Bank's complaint. It based its motion upon the *res judicata* effect of the 1992 dismissal of the Building Company's suit against Dana involving the same property (now owned by the Bank).

I grant Dana's motion and dismiss the complaint; the Clerk is directed to close this case.[1]

## II

Overlapping litigation by multiple (or successive) owners is one of the scourges of the legal system. It prevents effective negotiation of settlements because a party contemplating settlement must be concerned about lawsuits by others of the multiple owners based on the same alleged injury. Were a party causing damage to property to be subject to separate suits by every owner of a partial interest in it, almost any recalcitrant plaintiff, by holding out, would be in a position to block complete resolution of the matter. Such a "whipsaw" effect would injure all parties to the process.[2]

█ The development of different kinds and degrees of ownership in tangible and intangible property creates numerous situations in which a technically subordinate les-

see, optionee, remainder owner or similar interest holder may have an economic interest greater than that of the fee owner. A proper approach where multiple claimants are involved is for such claimants to intervene in the facially senior action (e.g., the fee owner's action), or in any earlier-filed suit, to insure receipt of their applicable share of any settlement or recovery. See Fed.R.Civ.P. 24. Knowing bypass of the opportunity to intervene may be treated as a waiver of rights to participate in any settlement or other resolution.[3]

█ Here the Bank bypassed the Building Company's suit as a vehicle for resolution of all asbestos-related claims against Dana related to the property, and then bought the property without taking any steps to obtain an assignment of the Building Company's then-pending claims against Dana. The Bank, as a sophisticated institutional party, cannot be deemed to have been misled by actions taken by the Building Company.[4] Nor does the Bank assert ignorance of events in the Building Company's litigation against Dana.

In buying the property based on negotiations it has not disclosed, the Bank had full opportunity to determine whether or not to exercise its option based on knowledge of the status of the relevant lawsuits, the intentions of the Building Company or its refusal to divulge them, the difficulties caused by presence of asbestos, and on other relevant facts it knew or could have learned. The Bank knew of, but did not openly participate in, the settlement of the suit between the Building Company and Dana. It waived any objection to the settlement and the dismissal of that suit, on whatever terms were involved, by

1. A prior motion to dismiss filed by Dana February 24, 1993 is denied as moot.

2. The possibility of previously hidden claims not yet time-barred being brought by holders of subordinate interests in property against suppliers of goods or services would injure the predictability of business relationships, with increased costs and risks to all concerned.

3. See *SCAC Transport v. Steamship Danaos*, 578 F.Supp. 327 (S.D.N.Y.1984), *rev'd on other*

grounds, 845 F.2d 1157 (2d Cir.1988); *Omar International v. ALAF*, 817 F.Supp. 394, 399 (S.D.N.Y.1993); Note, 79 Colum.L.Rev. 1551 (1979); Note, 19 J.Maritime L. & Com. 605 (1988).

4. See *Northwestern National Ins. Co. v. Donovan*, 916 F.2d 372, 374, 377 (7th Cir.1990); *Lone Star Industries v. Nelstad Material Corp.*, 811 F.Supp. 147 (S.D.N.Y.1993).

*failing to object to the dismissal.*[5]

 The Bank was in privity with the Building Company during the option period; the Bank cannot permit the Building Company to lose litigation relating to the property while taking no action to avoid this result, and then relitigate the issues. When a privy loses a litigation on the merits, the issues involved have been definitively determined. See *Amalgamated Sugar Co. v. NL Industries, Inc.,* 825 F.2d 634, 640 (2d Cir.), *cert. denied* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). A voluntary dismissal with prejudice is an adjudication on the merits. *Nemaizer v. Baker,* 793 F.2d 58, 60–61 (2d Cir.1986).

### III

Dana and the Bank might be faulted in varying degrees for sitting on their rights: Dana might have defended against the Bank's suit as multiplicitous at the outset and moved to consolidate the cases; the Bank might have claimed it was an indispensable party in the Building Company's action. Fatal laches, if chargeable to either party, are chargeable to both, although Dana's delay in asserting its currently asserted *res judicata* defense has been relatively brief (since 1992).

▮ *Res judicata,* however, is "a rule of fundamental and substantial justice, of public policy" as well as one "of private peace, which should be cordially regarded and enforced ..." *Federated Dept. Stores v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (internal quotation marks and citation omitted). Where principles important for the protection of the court system as well as the parties are involved, such interests may be recognized and their waiver by a party disregarded.[6] The importance to the judiciary, and to the public which uses its

services,[7] of avoiding waste of resources in duplicative litigation tips the scales against the party seeking multiple adjudications and is consequently decisive. See *Salahuddin v. Jones,* 993 F.2d 306 (2d Cir.1993); Fed. R.Civ.P. 1; Judicial Improvements Act of 1990, Pub.Law 101–650, 104 Stat. 5089, enacting 28 U.S.C. § 473.

The Bank's first bite at the apple (its option to object to or to participate in disposition of the Building Company's fee-owner suit against Dana) is bite enough.

SO ORDERED.

---

**5.** It is unnecessary here to determine whether or not the price paid by the Bank included or should be deemed to have included an actual or imputed reduction of the purchase price reflecting the presence of the asbestos and its failure to obtain assignment of the Building Company's claim against Dana. See generally *Barnes Landfill, Inc. v. Town of Highland,* 802 F.Supp. 1087, 1089 n. 3 (S.D.N.Y.1992); see also Trevaskis, "Measure of Damages for Regulatory Takings," 3

Probate & Property No. 2 at 127 (ABA Mar./Apr. 1989).

**6.** See *Jacobson v. Cohen,* 146 F.R.D. 95 (1993).

**7.** "Laws exist not for the scientific satisfaction of the legal mind, but for the convenience of the lay people who sue and are sued." F. Pollock to O.W. Holmes, Jr., in 1 *Holmes–Pollock Letters* 8 (Howe ed. 1961).