**COLONIAL SPRINGS CLUB, et al., Plaintiffs,**

v.

**WESTCHESTER COUNTY, et al., Defendants.**

**No. 90 Civ 4458 (VLB).**

United States District Court, S.D. New York.

Dec. 13, 1993.

---

**20**

Robert D. Owen, Owen & Davis, New York City, for plaintiffs.

Michael A. Zeytoonian, White Plains, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case brought under 42 USC 1983 seeking injunctive relief against Westchester County, its Health Department and Health Department officials, grows out of the long-accepted use by the Colonial Springs Club (the "Colonial") of a shallow private swimming pool fed by spring water. Only member families and their guests can use the pool; membership is limited to 35 families. The pool is never rented, nor is it open to the general public; it is protected by a chain link fence and two locked gates. It is not operated at or for a profit.

In 1989 the County agreed that Colonial would not have to supply a lifeguard but must limit the pool's depth, ban diving, and have two responsible adults present whenever the pool was in use. The pool is less than five feet deep with a surface area of less than 2,000 square feet. A permit was issued accordingly. In 1990, however, the County began to insist on lifeguard coverage and closed the pool without prior notice or hearing.

An amendment to Part 6–1 of the New York State Sanitary Code effective October 7, 1992 permits a pool of the type maintained by Colonial without a lifeguard if all of the members "own residential property in a fixed or defined geographical area ...." The County has determined that Colonial does not fit this category because its members are renters, not fee owners.

### II

■ The regulation involved here, in referring to property ownership, does not specify fee ownership or even use the term "real property" which may or may not include lessees. See J. Rasch, *New York Law and Practice of Real Property* § 1:2 (2d ed. 1991). The term "real property" is used in numerous state statutes such as the Real Property Actions and Proceedings Law, and the concept of fee ownership is likewise well known in the legal community. A difference between these laws and the far less restrictive terminology of the regulation at issue here should not be treated as meaningless. See *Sea Robin Pipeline Co. v. FERC*, 795 F.2d 182, 184 n. 1 (D.C.Cir.1986) (R. Ginsburg, J.); *Ohio Power Co. v. FERC*, 880 F.2d 1400, 1406 (D.C.Cir.1989), *rev'd. on other grounds* 498 U.S. 73, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990). Courts generally assume that rule-making and legislative bodies are "knowledgeable about existing law pertinent" to the subject. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85, 108 S.Ct. 1704, 1711–12, 100 L.Ed.2d 158 (1988).

■ In a generic sense, a leasehold is property—and property which can at times

be worth more than fee ownership, as where a tenant has a 99 year lease valued at more than the fee interest. Ability to control an asset over time such as that provided by a lease conferring rights over space in a building for a period of time can hardly be described as not a form of "property" one may "own".[1]

No grounds for a legitimate distinction between fee owners and leaseholders for purposes of ability to supervise a swimming pool has been suggested. Absent any indication of a legitimate reason, it appears on its face to be entirely arbitrary, discriminating with no rational basis against a large class of people merely because they cannot afford to, or did not choose to, invest in fee ownership. Permanency of commitment to the area, distinguishing member-users of a pool with lasting ties from members of the general public who may be less aware of risks may be absent in the case of fee owners who lease their property as well as renters who may terminate their leases. The County has offered no legitimate justification for its adoption of this distinction and cites no state administrative or judicial authority for the distinction.

 The distinction thus appears contrary to proper interpretation of the state regulation, and were this not so might well constitute a denial of equal protection contrary to the Fourteenth Amendment. Heightened scrutiny of disparate treatment is required under the Equal Protection Clause where suspect categories such as discrete insular minorities not likely to be adequately protected by the political process are involved. See *United States v. Carolene Products Co.,* 304 U.S. 144, 152–53 n. 4., 58 S.Ct. 778, 783–84 n. 4., 82 L.Ed. 1234 (1938). Even where such characteristics of a distinction are absent, however, equal protection is violated where harmful disparities in state treatment have no legitimate basis. See *Al-*

*legheny Pittsburgh Coal Co. v. Webster County,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989); *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985). Dictum to the contrary in *City of New Orleans v. Duke,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) appears to have been superseded by *Pittsburgh Coal* and *Metropolitan Life,* thus reinstating *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957).[2]

While renters do not appear politically disadvantaged in New York State, they may be in some areas; in any event, baseless discrimination against them cannot be countenanced. Failure of the County to advance any plausible or legitimate reason for the challenged distinction would be sufficient to permit its invalidation. See *Raymond Motor Transport v. Rice,* 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978); *Tetra Technologies v. Harter,* 823 F.Supp. 1116 (S.D.N.Y.1993) (both arising under the Commerce Clause).

Absence of any justification for an interpretation disqualifying Colonial, relevant to the equal protection issue, is also pertinent both to interpretation of the regulation in light of its purposes, see *Tedla v. Ellman,* 280 N.Y. 124, 19 N.E.2d 987 (1939), and to whether or not a contrary interpretation is properly subject to nonenforcement "because the rule [as so construed] lacks a public benefit." New York State Administrative Procedure Act § 102(10).

### III

While I find a significant possibility of an equal protection violation based on the facts before me, the complaint is not couched in those terms and thus the County was not until now clearly aware of that aspect of the case. Because of this and because the County may wish to reconsider its position in light of the factors relevant to the interpretation of the regulation at issue, it is appropriate to

---

1. Even contingent interests in assets can constitute property permitting its holder to share in payments for harm to the asset where such a claim is properly invoked. See *Chase Manhattan Bank v. Celotex Corp.,* 830 F.Supp. 790 (S.D.N.Y. 1993).

2. *Duke* upheld the permissibility of grandfather protection for local land uses extant prior to a

regulatory action, not only be obviously reasonable but in many circumstances constitutionally required absent compensation. See *Lucas v. South Carolina Coastal Council,* —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *People v. Miller,* 304 N.Y. 80, 106 N.E.2d 20 (1952).

**22**

defer decision to permit the county to do so. See *Lichtler v. County of Orange,* 813 F.Supp. 1054 (S.D.N.Y.1993).

Defendants are directed to reconsider Colonial's request for acceptance under New York State Sanitary Code Part 6–1 as an association "all of whose members own residential property in a fixed or defined geographical area . . ." and to report the results to the court within 45 days of the date of this memorandum order. Should the report be negative, then within 30 days of such report, defendants are directed to submit any available material relevant to whether or not the distinction thus imposed is consistent with the equal protection guarantee of the Fourteenth Amendment.

SO ORDERED.