**INTERCOMMUNITY RELATIONS COUNCIL OF ROCKLAND COUNTY, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES** and Nyack Community Child Development Center, Inc., Defendants.

No. 94 Civ. 3505 (VLB).

United States District Court, S.D. New York.

July 1, 1994.

Leroy Wilson, Jr., White Plains, NY, for plaintiff.

Linda Riffkin, Asst. U.S. Atty., New York City, for defendant HHS.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This litigation brought under the Administrative Procedure Act (5 U.S.C. § 706) and other sources of federal law, concerns primarily whether the United States Department of Health and Human Services ("HHS") should be required to continue funding of the plaintiff Intercommunity Relations Council ("IRC") under the Head Start program for federally assisted early childhood education after the expiration of IRC's contract at the end of June 1994. Plaintiff has moved for a preliminary injunction preventing termination of its funding. The motion is denied.

### II

IRC contends that panels used in evaluating grant applicants were improperly selected and utilized—a claim which deserves careful evaluation but might militate against IRC's own grant which it seeks to extend as well as against any alteration in grantees. IRC contends the process of evaluating potential grantees for the period beginning in July 1994 was flawed because of errors and inconsistencies, including that numerical ratings of evaluators incorrectly failed to give IRC sufficient credit for awareness of children with special needs in the area. IRC asserts that it has been unable to secure information under the Freedom of Information Act or otherwise to permit it to obtain an overview of the selection process in order to pinpoint other potential errors.

IRC asserts that it was denied equal protection by the procedures followed by HHS.

### III

As set forth in *Bridgeport Coalition for Fair Representation v. City of Bridgeport,* 26 F.3d 271, 274 (2d Cir.1994):

> The standard in the Second Circuit for injunctive relief clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

See *Paddington Corp. v. Attiki Importers,* 996 F.2d 577 (2d Cir.1993); *Plaza Health Laboratories v. Perales,* 878 F.2d 577, 580 (2d Cir.1989); *Jackson Dairy v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979).

### IV

■ IRC has shown risk of irreparable injury to itself, see *Southern Mutual Help Ass'n v. Califano,* 574 F.2d 518 (D.C.Cir. 1977), but not to the child beneficiaries, which must be shown for relief to be granted. As indicated in *Economic Opportunity Commission v. Weinberger,* 524 F.2d 393, 405 (2d Cir.1975) (Friendly, J., concurring):

> The primary interest of Congress lay in the persons to be benefitted by the program, not in those who were to administer them.

■ IRC has not shown probable success on the merits or equities tipping decisively in its favor. There has been no showing that IRC should have been selected or would provide the best service.[1] Moreover, in cases

---

1. As indicated by papers submitted by IRC, a controversy has developed concerning whether an IRC executive was receiving compensation at a rate appropriate to full time work, at the same time that the executive received compensation from other agencies. While the information

of this type, courts are traditionally and justifiably reluctant to grant interim relief which disrupts the ability of a governmental agency to perform its duties. While the Administrative Procedure Act provides an avenue for affected persons to challenge arbitrary administrative action, the statute excepts matters "committed to agency discretion by law." 5 U.S.C. § 701(a). This exclusion states almost a truism that in areas where no statutory or constitutional mandate limits agency action, no improperly arbitrary or illegal action is possible; there would be "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985); see also *Webster v. Doe*, 486 U.S. 592, 600, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988).

In this instance Congress has authorized HHS to designate public or private nonprofit agencies to assist in carrying out the objectives of the Head Start program, but laid down no requirements with respect to how such agencies should be selected or retained. 42 U.S.C. § 9836; see also 42 U.S.C. § 9833. IRC has established no violations of these sections. Under such circumstances "Congress has given HHS broad authority to operate the Head Start project." *Community Action of Laramie County v. Bowen*, 866 F.2d 347, 353 (10th Cir.1989).

"Funding determinations are 'notoriously unsuitable for judicial review, for they involve the inherently subjective weighing of the large number of varied priorities which combine to dictate the wisest dissemination of an agency's limited budget.'" *Id.* at 354–55, quoting *Alan Guttmacher Inst. v. McPherson*, 597 F.Supp. 1530, 1536–37 (S.D.N.Y.1984).

It has long been recognized that injunctions interfering with ongoing governmental operations at the instance of private parties whose vested rights, if any, can be dealt with later, must be granted with caution. See *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n. 11, 69 S.Ct. 1457, 1462 n. 11, 93 L.Ed. 1628 (1949). Without such caution, one or more parties could al-

most always object to every important decision and block action while their contentions were considered by the judiciary. The objecting party might, indeed, have an advantage over the winner, in that the latter would have to negative any possible improprieties in its selection, whereas the loser would not need to show that it was the best choice for the assignment.

Where Congress wished to permit private standing for suits or protests to challenge funding decisions, as in the instance of bid protests, it has done so specifically. See 31 U.S.C. § 3551. Such differences in statutory language should not be ignored lightly. *Sea Robin Pipeline Co. v. F.E.R.C.*, 795 F.2d 182, 184 n. 1 (D.C.Cir.1986) (R. Ginsburg, J.). While absence of such a decision by Congress does not prevent recourse to the Administrative Procedure Act, that Act should not lightly be applied so as to create the equivalent of a bid protest system in regard to governmental grants.

V

■■ IRC points to asserted shortfalls in HHS provision of information about the grant selection process involved under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a). The Act is intended to provide information to the public at large—including IRC but only in its role as part of the public—concerning government operations. While IRC has not received all the information it contends it is entitled to obtain, such disagreements are the gist of FOIA litigation and do not necessarily establish wrongdoing in regard to the activities toward which FOIA requests were directed.

■■ An adverse inference may be drawn when a litigant fails to provide relevant information in matters concerning the litigation. See *Baxter v. Palmigiano*, 425 U.S. 308, 316–29, 96 S.Ct. 1551, 1557–63, 47 L.Ed.2d 810 (1976); *Gray v. Great American Recreation Ass'n*, 970 F.2d 1081, 1082 (2d Cir.1992); Fed.R.Civ.P. 37(c)(1) (1993). FOIA is not primarily a tool for use in other litigation, nor does a shortfall in FOIA responses necessarily lead to an adverse infer-

---

available is insufficient to indicate who, if any one, was right or wrong in regard to this disagreement, such matters if considered by HHS

would not necessarily suggest arbitrary or capricious conduct on its part.

ence in that context. Apart from this distinction between the purposes of the FOIA and of discovery requests under the Federal Rules of Civil Procedure, were an inference to be drawn adverse to HHS here, for purposes of the litigation, it would be insufficient to justify granting the requested preliminary relief.

## VI

■ The Administrative Procedure Act vouchsafes availability of judicial review of action "contrary to constitutional right," 5 U.S.C. § 706(2)(A), but there is no constitutional right to a discretionary federal contract or grant. See *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). Selection as a Head Start agency is not an entitlement.[2]

Plaintiff claims that its equal protection rights have been violated. The Fifth Amendment due process clause contains an equal protection component applicable to federal action. See *United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Lyng v. Castillo*, 477 U.S. 635, 636 n. 2, 106 S.Ct. 2727, 2728 n. 2, 91 L.Ed.2d 527 (1986); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Equal protection, moreover, applies to economic as well as other matters. *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985); *Allegheny Pittsburgh Coal Co. v. County Com'n*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).[3]

No claim has been made or evidence submitted, however, which would suggest discrimination based on invidious grounds,[4] or any other basis for imposing heightened scrutiny. While IRC claims that errors were made in the HHS selection process, there is

no evidence that IRS was not given an impartial overall evaluation along with other applicants.

## VII

No evidentiary hearing was held on the current motion because IRC's submissions of actual facts, as distinct from conclusions, would not if believed be sufficient to warrant a preliminary injunction. See *Drywall Tapers v. Local 530*, 954 F.2d 69 (2d Cir.1992).

SO ORDERED.

---

**2.** Compare *Bartlett v. Bowen*, 816 F.2d 695 (D.C.Cir.), *reinstated* 824 F.2d 1240 (D.C.Cir. 1987); *Marozsan v. United States*, 852 F.2d 1469, 1477–79 (7th Cir.1988) (en banc).

**3.** Statements to the contrary in the *per curiam* decision in *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), which upheld a grandfather clause protecting former users of rezoned property, appear to have been overruled by the above cases, and were in any event unnecessary to the decision.

Retroactive zoning raises constitutional questions. See *People v. Miller*, 304 N.Y. 105, 106

N.E.2d 34 (1952); Note, 43 ColumLRev 207 (1943); Noel, "Retroactive Zoning and Nuisances," 41 ColumLRev 456 (1941).

Current precedent appears to be in accord with, and to thus revive, *Morey v. Doud*, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), which held it a violation of equal protection for a state to impose restrictions on all travelers check sellers except a single company identified by name.

**4.** See *United States v. Carolene Products Co.*, 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938).