Sharon **KRAEMER–KATZ**, Plaintiff,

v.

**UNITED STATES PUBLIC HEALTH SERVICE, United States Food & Drug Administration; National Institutes of Health; National Institute of Arthritis and Musculoskeletal and Skin Diseases; [name omitted] Hospital; and two individual persons, Defendants.**

**No. 94 Civ. 5829 (VLB).**

United States District Court,
S.D. New York.

Dec. 13, 1994.

Dennis G. Katz, Spring Valley, NY, for plaintiff.

Judith L. Mogul, Asst. U.S. Atty., New York City, for the U.S. and federal defendants.

Dewey Lee, New York State Dept. of Law, Poughkeepsie, NY, for state defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case involves termination of administration of an investigational drug to a patient involved in a study of its possible use as a treatment for osteoporosis.[1] Plaintiff alleges that her participation in an investigational study of the drug was arbitrarily terminated by the treating hospital, resulting in her no longer receiving the medicine, which had been protecting her bone mass from now recurring loss. The reasons for plaintiff's termination as a subject of the testing program are controverted; plaintiff appears to have had a dispute with personnel of the hospital, leading to a malpractice suit based on conduct indirectly related to the study.

Plaintiff asks the court to order all of the federal and other institutions involved to continue to provide the drug, and requests an award of damages in the amount of five (5) million dollars. According to plaintiff, the federal agency defendants and their staff are liable for failure to insist that those hospitals and their staff conducting the tests of the drug, although private and nonfederal public sector bodies, continue to administer the drug to plaintiff. Plaintiff contends that failure to continue to provide the drug to her should lead to a cutoff of all federal funding to the institutions involved.

Plaintiff's memorandum of law, which is treated as a supplement to the complaint for this purpose, can be read as complaining that failure to provide plaintiff with administrative relief under the Federal Food, Drug and Cosmetic Act, as well as alleged improper termination by the hospital, is preventing provision of the drug to her and causing her to lose bone mass.

### II

The United States Attorney has moved to dismiss the complaint for lack of subject matter jurisdiction, failure to state a claim, lack of standing, and lack of available relief which would assist plaintiff. The United States Attorney argues among other things that (a) no federal law requires any federal agency to insist that a patient continue to be provided with a drug being tested by a non-federal agency, and (b) any failure of the hospital and other non-federal personnel or agencies is a violation solely of state, not federal law (no diversity of citizenship jurisdiction is claimed).

The complaint is dismissed in part under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, as follows:

(a) the complaint is dismissed with respect to all claims against federal agencies and personnel except with respect to prospective relief under the Administrative Procedure Act if plaintiff can establish improper denial of administrative relief concerning any Federal Food, Drug and Cosmetic Act prohibition of provision of the drug to plaintiff;

(b) all damage claims against any federal agency or personnel are dismissed;

(c) all claims against any natural person federal defendant are dismissed.

The complaint will also be dismissed as to other defendants unless plaintiff establishes both a genuine issue of material fact with respect to state law claims and the appropriateness of exercise of supplemental jurisdiction over such claims under 28 U.S.C. 1367 rather than their remission to state court. The complaint will also be dismissed as to any natural person defendant remaining in the case unless plaintiff establishes that retention of such defendant is necessary to provide complete relief to plaintiff.

In order to proceed with the remaining federal claim, plaintiff must establish existence of a genuine issue of material fact concerning a claim for prospective relief under the Administrative Procedure Act from denial of a request for administrative relief by the United States Food and Drug Administration or other applicable federal agency.

---

1. All names of individual defendants and private institutions are omitted to avoid their unnecessary placement in data bases; the name of the drug is omitted since this controversy does not reflect favorably or unfavorably on its usefulness. See *Christiana v. Metropolitan Life,* 839 F.Supp. 248 (S.D.N.Y.1993).

It is not necessary that the request for such administrative relief be made by any of the defendants if made by any other responsible medical practitioner or institution.

In sum, with respect to the federal defendants, plaintiff is permitted to seek prospective relief challenging any federal agency refusal to waive upon request any regulatory prohibition blocking her from continuing to receive an investigational medication previously administered to her as party of a study. Any claim that federal agencies or personnel must require a hospital or other administrator of a medical study to provide a drug is dismissed.

Discovery is stayed until a ruling is made with respect to viability of plaintiff's remaining claims. The defendant hospital must supply a statement to this court as of forty-five (45) days of the date of this memorandum order, as to whether or not any requests have been made to any federal agency seeking approval of, or waiver of any barrier to, continued administration of the drug involved to plaintiff.

The submissions plaintiff is permitted to make by this memorandum order shall be provided within forty (40) days of the date of this memorandum order based upon information available to plaintiff without discovery except as noted above.[2]

Except as outlined above, the United States Attorney's motion is denied without prejudice.

### III

■ Because of the importance of investigational pharmaceutical testing, it is important to set forth at the outset those rulings now made finally or tentatively which will function to protect those conducting such tests:

(a) No damage suits against any federal agencies or personnel are authorized.

(b) Federal law does not require anyone conducting such testing to continue anyone in a testing program or to continue to provide the product being tested.

■ Unless otherwise shown, it also appears that for reasons outlined below, federal law precludes any state law requirement that participation in a federally sponsored drug testing program entitles a participant to continue to receive the drug being tested, although breach of contract claims under state law may, if independently viable and not barred by defenses not mentioned above, be pursued.

### IV

■ The court has subject matter jurisdiction under 28 U.S.C. 1331 over claims arising under federal law. See *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

■ A procedural framework for private suits challenging federal agency action or inaction was established by the Administrative Procedure Act, permitting challenge to be brought in the district courts where a private party is adversely affected by final agency action claimed to be contrary to law. 5 U.S.C. § 702; see *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The APA constitutes a waiver of sovereign immunity with respect to equitable relief but not damages where a violation of federal law supporting relief under the Act can be shown. *Alabama v. Bowsher,* 734 F.Supp. 525 (D.D.C.1990); see *Bowen, supra.* APA coverage, however, is not necessary for subject matter jurisdiction under 28 U.S.C. § 1331. *Air Courier Conference v. Postal Workers,* 498 U.S. 517, 523 n. 3, 111 S.Ct. 913, 917 n. 3, 112 L.Ed.2d 1125 (1991); *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).

■ Existence of subject matter jurisdiction does not necessarily mean that relief can be granted. See *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). A violation of law and appropriateness of the relief are both necessary for that purpose. See

---

**2.** *Celotex v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), makes it clear that courts may on their own motion request parties to establish existence of a genuine issue of material fact under Fed.R.Civ.P. 56. See *Jacobson v. Cohen,* 151 F.R.D. 526 (S.D.N.Y. 1993).

*Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988).

■ Monetary relief beyond recovery for confiscatory acts raising constitutional questions or recovery authorized by specific statutes may have adverse effects on the deep-pocketed federal Treasury. In part for this reason, suits against federal agencies for damages in their regulatory as distinct from proprietary capacity is limited to situations where a statute expressly or impliedly so indicates. *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).[3]

V

In order to protect the public from unsafe or ineffective pharmaceuticals, the federal Food, Drug and Cosmetic Act requires advance approval of New Drug Applications by the United States Food and Drug Administration prior to their distribution. See *United States v. Generix Drug Corp.,* 460 U.S. 453, 103 S.Ct. 1298, 75 L.Ed.2d 198 (1983). The delays inherent in the testing necessary for approval has been recognized as presenting a problem requiring reasonable steps to expedite action where feasible and to minimize resultant hardships. *Burroughs Wellcome Co. v. Schweiker,* 649 F.2d 221 (4th Cir.1981); Drug Price Competition and Patent Term Restoration Act of 1984, Public Law 98–417, 98 Stat. 1585; see *Westwood v. Cohen,* 838 F.Supp. 126 (S.D.N.Y.1993).

Where other effective treatments are unavailing, prescription of medications not yet approved for general distribution have been authorized for compassionate reasons, especially since 1980. See 21 U.S.C. 355; 21 C.F.R. 312; Hearings before the Subcommittee on Health, Committee on Energy & Commerce, 97th Cong., 1st Sess. 49 (March 9, 1991); Ahern, "Drug Approval in the United States and England," 17 Suffolk Transnational L Rev 93 (Winter 1994); Henry, "Problems With Pharmaceutical Regulation in the United States," 14 J Legal Medicine 617 & n 51 (Dec.1993); Panel Discussion, 45 FDC LJ # 4 at 327 (1990).[4]

The Food and Drug Administration has thus increasingly recognized that a rigid regulatory prohibition on continued administration of a product previously permitted to be provided to a patient as part of an investigation, would appear to serve none of the public purposes for which the statutes involved were enacted. Neither 21 CFR nor the objectives of the statute do not preclude consideration on the merits of applications for waiver of a barrier to administration of an investigational drug if made by a responsible medical practitioner or institution.

As stated by Chief Justice Stone in *United States v. Classic,* 313 U.S. 299, 317–18, 61 S.Ct. 1031, 1038–39, 85 L.Ed. 1368 (1941):

To decide, we turn to the words [of the document involved] read in their historical setting as revealing the purposes of its framers, and search for admissible meanings of its words which, in the circumstances of their application, will effectuate those purposes.

■ The development of compassionate authorizations for use of medications not yet approved for general distribution, accelerated because of the spread of the AIDS virus, has not been and cannot properly be limited to AIDS cases. Other situations such as that alleged by the complaint here may likewise involve patients facing life-threatening or debilitating symptoms not adequately treatable by fully approved medicines. A federal agency's denial of permission to obtain such medications would support standing to seek

---

**3.** The inclusion of a five million dollar ($5 million) demand for damages in the complaint is in itself a cause for potential concern under Fed. R.Civ.P. 11 unless it can be adequately supported. See *Hudson v. Moore Business Forms,* 827 F.2d 450, 456–58 (9th Cir.1987), *revised* 836 F.2d 1156 (9th Cir.1988); *Thomas v. Yonkers,* 147 F.R.D. 77, 81–82 (S.D.N.Y.1993).

In particular, any use of such claims if unjustified, as a means of applying pressure to natural persons or audited institutional defendants is improper. See Fuld, "Lawyer's Responses to Auditors," 44 Business Law # 1 at 159 (Nov. 1988).

**4.** For discussion of these issues leading up to the present relatively open approach to permitting compassionate use of investigational products, see Editorial, "Treatment Monopoly," Wall St. J Nov. 15, 1985; Cato Institute Report 72, "Compassion Vs. Control: FDC Investigational Drug Regulation (May 1986).

review of the decision. *Cushing v. Moore*, 970 F.2d 1103 (2d Cir.1992).[5]

## VI

The United States Attorney's memorandum of law indicates that plaintiff has been advised of a means for a sponsor of a product to make an administrative application for emergency authorization to administer a substance under 21 C.F.R. 312.36, and that emergency relief is available when appropriate under federal agency procedure.[6] While this observation extending beyond the text of the complaint does not justify dismissing the complaint without converting the present motion in one for summary judgment under Fed.R.Civ.P. 12(b)(6) and 56, plaintiff must respond to this point in order to pursue any claim against the federal institutional defendants.

There is no basis in any federal statute authorizing suits for damages relating to any of the undismissed claims against any of the federal defendants. Nor is there any evidence of reckless disregard of constitutional or statutory rights which would justify consideration of individual liability or which could survive qualified immunity.[7]

## VII

Under regulations applicable to the hospital's federally funded research concerning the drug (45 C.F.R. 46.116(b)(2)), a volunteer given the medicine must be informed of "Anticipated circumstances under which the subject's participation may be terminated by the investigator without regard to the subject's consent." This confirms that under federal regulations pursuant to statute, a hospital or practitioner conducting an approved investigational drug testing program may terminate a participant, provided that advance notice of that risk is given. Any interpretation of state law destroying this option by treating termination as improper abandonment of the patient would "undercut" the objectives of federal law and hence be preempted. See *Ft. Halifax Packing Co. v. Coyne*, 482 U.S. 1, 20, 107 S.Ct. 2211, 2222, 96 L.Ed.2d 1 (1987). State law interpretations which cause "interference with policies implicated by the structure" of federal statutes are barred. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985).

The reference to notice of conditions under which termination of a medication may occur without consent, indeed, implies that termination is permitted in an investigational drug testing program insofar as federal law is concerned, so long as advance disclosure of the risk is provided to the patient. Otherwise, such language would be surplusage. *Sea Robin Pipeline v. F.E.R.C.*, 795 F.2d 182, 184 n. 1 (D.C.Cir.1986) (R. Ginsburg, J.).

Plaintiff's argument that federal law compels continued administration of an investigational drug appears based on an underlying assumption that there is an automatic inference of a vested right to continuance of a benefit of any kind once it is conferred at all. Such an assumption would have a chilling effect on almost any beneficial activity where its sponsors or those funding it cannot foresee whether its continuance would be

---

**5.** A distinction between one disease and all others would be difficult to support as rational, and hence would be vulnerable to challenge under the equal protection component of the due process clause of the Fifth Amendment. See *United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Lyng v. Castillo*, 477 U.S. 635, 636 n. 2, 106 S.Ct. 2727, 2728 n. 2, 91 L.Ed.2d 527 (1986); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) (District of Columbia desegregation case); see also *News America Publishing v. FCC*, 844 F.2d 800 (D.C.Cir.1988); *Colonial Springs v. Westchester*, 840 F.Supp. 19 (S.D.N.Y.1993).

**6.** Delays in action on the part of governmental agencies may, in appropriate cases, require judi-

cial relief. See *Davila v. Shalala*, 848 F.Supp. 1141 (S.D.N.Y.1994); *Dollar Dry Dock Bank v. Denning*, 148 F.R.D. 124 (S.D.N.Y.1993).

**7.** The Federal Employees Liability Reform and Tort Compensation Act, Public law 100–694, 102 Stat. 4563, adopting 28 U.S.C. 2679(b), was based on congressional recognition that "possible exposure of federal employees to personal liability could lead to a substantial diminution in the vigor of federal law enforcement and implementation." H.Rep. 700, 100th Cong., 2d Sess., reprinted in 1988 U.S.Code Cong. & Admin.News 5945, 5947; see also *Archer v. Globe Motorists*, 833 F.Supp. 211 (S.D.N.Y.1993).

useful, appropriate, or possible. See *Inter-community Relations Council v. United States,* 859 F.Supp. 81 (S.D.N.Y.1994).

Moreover, mandatory acquiescence to patient requests to continue administration of an investigational medication once initially provided could lead to tragic consequences to the provider as well as to the patient. A judicially-created or inferred rule of federal law that a patient may override a provider's perception of hazards involving a medication would be unprecedented and, quite likely, unwise.

■■■ There is no clear statutory or regulatory basis for inferring an inherent right of one receiving an investigational medication to continue to receive it at the expense and risk of the provider; to infer such a right would run counter to what Chief Justice Harlan F. Stone called the anticipated "sober second thought of the community." [8]

Since the non-federal defendants are permitted although not required by 45 C.F.R. 46.116 to discontinue plaintiff's medication once she is removed from the investigational aspect of her participation in use of the drug, the federal defendants are not liable for failing to take action to compel continuance of administration of the drug.[9]

## VIII

A related provision of the federal regulations, 45 C.F.R. 46.116 bars waivers of "the subject's legal rights." This clause is consistent with the provision quoted and discussed in part V above if interpreted to refer to such rights as a contractual commitment to continue to offer a product if successful and if not barred by federal regulations. As an addendum to the complaint, plaintiff has also furnished alleged statements by the hospital to her which might be construed as promising to continue administration of the drug under conditions which plaintiff claims were fulfilled.

■■■ A contractual agreement or federal prohibition of waivers of some types of state law rights does not, however, convert the non-waivable state rights into federal rights, nor create a third party beneficiary contract violation of which supports a claim arising under federal law. See *Price v. Pierce,* 823 F.2d 1114 (7th Cir.1987), *cert. denied* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988); Special Committee on Consumer Affairs, "Remedies Short of Consent or Litigated Orders for Violation of the Federal Trade Commission Act," 32 Record Ass'n Bar City of NY 622 (1977).

■■■ A contractual obligation, if found, implies a requirement to perform any ordinary and necessary tasks needed to implement the obligation. See *TIAA v. Coaxial,* 807 F.Supp. 1155 (S.D.N.Y.1992). A claim seeking enforcement of any contractual commitment to continue administration of an investigational drug under state law, would appear to include assertion of a possible obligation to request a waiver of any federal regulatory barrier to such administration.

■■■ A serious question is raised, however, if a malpractice suit has been brought against hospital personnel by plaintiff. Litigation or other sources of hostility between hospital staff and a patient who has already sued one or more hospital employees is not conducive to the mutual trust necessary for medical treatment or investigational drug testing. A question is presented as to whether state or federal law permits the hospital to proceed with administration of the drug under such circumstances. See *House of Materials v. Simplicity Pattern Co.,* 298 F.2d 867, 871–72 (2d Cir.1962).

## IX

If plaintiff's state law claims are viable, full relief would appear to be obtainable from the institutional non-federal defendants. Unless the contrary can be shown, retaining individual natural person defendants would be con-

---

8. Stone, "The Common Law in the United States," 50 Harv.L.Rev. 4, 25 (1936).

9. Even were such compulsion called for, the drastic measure of cutting off funding would not be required to be the first step taken. Instead,

balancing of all relevant equities would be appropriate in framing relief. See *Paddington Corp. v. Attiki Importers,* 996 F.2d 577 (2d Cir.1993); *Jackson Dairy v. H.P. Hood & Sons,* 596 F.2d 70, 72 (2d Cir.1979).

trary to the "just, speedy and inexpensive" determination of the action sought by Fed. R.Civ.P. 1. See *Archer, supra.*

### X

Since plaintiff would be permitted to challenge any federal regulatory barrier precluding her from obtaining access to the drug involved, and claims to have benefitted from the drug in the past and to have suffered disastrous bone loss since its discontinuance, the institutional parties to this case are directed to consider available options for resolution of this dispute unless medically inappropriate.[10]

### XI

Because of indications of possible hostility between plaintiff and some non-federal agency personnel (doubtless not salved by plaintiff's decision to sue natural person defendants and to include in the complaint a demand for a multi-million damage award), the parties may wish to consider obtaining a neutral medical opinion on the most appropriate course of action, and to agree to be guided by the resulting recommendation.

While less knowledgeable than those conducting the investigation of the drug, an independent expert with background in the general area of investigation involved would have the advantage of impartiality and a fresh look at the matter. See *Heldman v. Sobol,* 846 F.Supp. 285 (S.D.N.Y.1994). Such a neutral expert could be selected by the parties or selected by the court pursuant to agreement of the parties.

SO ORDERED.

---

10. It would be a gross miscarriage of justice for plaintiff to obtain agreement for the product to be provided to her and then initiate further litigation because of any consequences of such action. To confront any of the defendants with such a risk would be to confront them with a Hobson's choice exposing them to litigation regardless of the path chosen.

Since medical risks may be involved in continued or re-administration of the drug, it would appear necessary for plaintiff to consider a waiv-er of any malpractice or other claims resulting directly or indirectly from such action if taken at her request. If such a waiver is intelligently made with the opportunity to obtain legal and medical advice, entered into as part of settlement of litigation, and made part of an order of settlement, the parties may request that jurisdiction to enforce it be reserved under *Kokkonen v. Guardian Life,* —— U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).